UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SILAS PHIPPS                                                CIVIL ACTION

v.                                                          NO. 15-3296

HOUSING AUTHORITY OF NEW ORLEANS                            SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's Rule 12(b)(6) and Rule 12(b)(1) motion to dismiss. For the reasons that follow, the motion is GRANTED.

**Background**

This employment discrimination case arises out of a former Housing Authority of New Orleans police officer's claims that HANO discriminated against him on the basis of his sex and sexual orientation, continued to discriminate against him, and ultimately terminated his employment in retaliation for his discrimination complaints as well as for his reports that other HANO officers engaged in payroll fraud.

Silas Phipps is a bisexual male.[1]  Mr. Phipps began working as a police officer with the Housing Authority of New Orleans in March 2013.  He consistently met or exceeded his performance goals.

On December 5, 2014, Sergeant Harry Stanley left his assigned shift early, without clocking out, so that he could work an off-duty paid detail.  Phipps notified Captain Granetta Harris that Sgt. Stanley had committed payroll fraud in violation of Louisiana law.  HANO took no action to address the Phipps's complaint or to discipline Sgt. Stanley.  Phipps then reported this incident to the Metropolitan Crime Commission.

On March 17, 2015, during a roll call meeting in the presence of Phipps and other police officers, Captain Harris made derogatory comments regarding homosexuals.  That same day, hoping to report Captain Harris for her remarks, Phipps attempted to contact, but was not able to reach, HANO's Director of Public Safety, Chief Robert Anderson.  The next day, Phipps met with Chief Anderson and complained about Captain Harris's comments.  Anderson instructed Phipps to speak with HANO's Human Resource Manager, Kelly Walker. That same day, Phipps lodged a complaint about Captain Harris.

---

[1] The factual summary is taken from the complaint as well as the Equal Employment Discrimination charges of record.

2

Later that same day, Officer Emanuel Smith[2] lodged a complaint against Phipps in which he stated that Phipps had searched law enforcement databases for criminal records concerning Officer Smith.  Two days later on March 20, 2015, Sergeant Tommy Mercadel told Phipps that Captain Harris had gossiped about Phipps potentially having a sexual relationship with Sergeant Tyrone Martin.  One week later, Chief Anderson and Ms. Walker met with Phipps to tell him that they determined that his complaint against Captain Harris was credible.  Phipps was also told that he was under investigation based on Officer Smith's complaint.

A few days later on March 30, 2015, Phipps submitted a charge of discrimination to the Equal Employment Opportunity Commission regarding Captain Harris's comments made during the March 17th roll call.  Under penalty of perjury, Phipps wrote in the charge:

> On March 17, 2015 Captain Granetta Harris initiated a 30+ minute conversation about people who were homosexual.  Captain Harris asked a subordinate officer, "Are they born gay or is it a choice?"  Captain Harris states that her son's girlfriend visits and is sometimes left alone with him.  Harris added "I hope he is knocking her loose.  That means he's not gay."  Marcus Dubuclet (Police Officer) stated he does not actively associate with homosexuals.  He does not agree with it and it is a choice.  Even though I have never revealed my sexual orientation to anyone I felt these discussions were offensive.  Also, I have been previously informed through

---

[2] Officer Smith was close with Captain Harris; he shared an office with her and served as her unofficial administrative assistant.

> hearsay that Captain Harris made comments referencing my sexuality. I believe I have been discriminated against based on my sexual orientation. . . .[3]

On April 7, 2015, during a meeting with Chief Anderson, Captain Harris, and Sergeant Martin, Phipps was told that he was being placed on administrative leave pending the outcome of an investigation against him.[4] Chief Anderson told Phipps that he would attempt to complete the investigation during the week of April 11, 2015. Less than 48 hours later, Phipps was served with a Notice of Proposed Termination.

Phipps appealed the decision to terminate his employment, but HANO upheld the termination, which became effective on May 21, 2015. Meanwhile, on May 14, 2015, the EEOC issued its right to sue letter related to the March 30, 2015 EEOC Charge concerning the comments made during March 17 roll call. Phipps filed a second charge of discrimination on June 17, 2015; he charged that he was discriminated against on the basis of sex and sexual orientation, and also charged retaliation for engaging in protected activity.

---

[3] Phipps checked boxes on the form, charging that HANO had discriminated against him based on "sex" and "other -- sexual orientation."

[4] No other HANO police officer was placed on administrative leave during the two years Phipps worked for HANO.

4

He stated that the dates of discrimination and retaliation took place between March 17, 2015 and May 21, 2015.[5]

On August 5, 2015, Phipps sued HANO, alleging employment discrimination based on sex and sexual orientation, as well as retaliation under Title VII of the Civil Rights Act of 1964.[6] Phipps also alleged, pursuant to the Court's supplemental jurisdiction, state law employment discrimination, retaliation, and whistleblower claims. HANO requested dismissal of the initial complaint, but the request was denied as moot after the plaintiff was granted leave to file an amended complaint. HANO now seeks to dismiss each of the claims advanced by the plaintiff in his amended complaint.

I.

A.

The subject matter jurisdiction of federal courts is limited. Kokkonen v. Guardina Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Indeed, "[i]t is to be presumed that a cause lies outside this limited jurisdiction," the Supreme Court has observed, "and

---

[5] Phipps alleges that "[a]ll conditions precedent to the institution of this suit have been fulfilled." But nowhere does he allege that the EEOC has issued, or that he has received, a right to sue letter associated with the June 17, 2015 charge.
[6] Phipps alleges that HANO discriminated against him because his sexual orientation was not consistent with HANO's perception of acceptable gender roles; his status as a bisexual male did not conform with HANO's gender stereotypes associated with men; and as a bisexual male, he associated with other males in his private life.

5

the burden of establishing the contrary rests upon the party asserting jurisdiction." Id. (citations omitted).  Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In challenging this Court's subject matter jurisdiction over the plaintiff's state law claims, the defendant contends that the plaintiff failed to state a claim under federal law, or otherwise failed to exhaust administrative remedies respecting all federal claims, and the Court lacks subject matter jurisdiction over the remaining state law claims.

 The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  King v. U.S. Dep't of Veterans Affairs, 728 F.3d 410, 416 (5th Cir. 2013); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

*B.*

In addition to the jurisdictional challenge, the defendant also seeks dismissal of the plaintiff's claims for failure to state a claim under Rule 12(b)(6).  The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6).  See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." See Thompson v. City of Waco, Texas, 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012)(en banc)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Id. at 502-03 (citing Iqbal, 556 U.S. at 678).

To survive dismissal, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted)(citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

## II.

### *A.*

HANO first seeks dismissal of the plaintiff's Title VII sex discrimination and retaliation claims based on events occurring after March 17, 2015 on the ground that those claims are premature because the plaintiff has not yet exhausted his administrative remedies. The plaintiff counters that he was not required to exhaust his administrative remedies prior to pursuing a retaliation claim arising out of an earlier charge, invoking Gupta v. East Texas State University, 654 F.2d 411, 414 (5th Cir. 1981).

Plaintiffs pursuing employment discrimination claims must exhaust administrative remedies before pursuing claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). This exhaustion requirement is met when the plaintiff files a timely charge with the EEOC and receives a right to sue letter. Id. (citation omitted). In Gupta, the Fifth Circuit endorsed a limited exception to the exhaustion rule, holding that a retaliation claim that is filed after and in response to an earlier discrimination charge is excepted from the exhaustion rule. 654 F.2d at 414. Whether Gupta is still good law, however, is the subject of some debate. Indeed, the Circuits that have considered whether Gupta-like rules were abrogated by the Supreme Court in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) are split.[7] But this Court need not weigh in on this debate because

---

[7] Compare Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003)(abolishing Gupta-like exception because "Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted"; "Morgan requires a Title VII plaintiff to exhaust administrative remedies for each individual discriminatory or retaliatory act[.]") with Jones v. Calvert Grp., Ltd., 551 F.3d 297, 303 (4th Cir. 2009)("[Morgan] does not purport to address the extent to which an EEOC charge satisfies exhaustion requirements for claims of related, post-charge events") and Wedow v. City of Kan. City, Mo., 442 F.3d 661, 672-76 (8th Cir. 2006)("Guided by the principles set forth in Morgan, we continue to adhere to a narrow reading of this exhaustion exception, but we decline, on the facts before us, to abandon it *in toto* where the subsequent retaliatory acts were of a like kind to the retaliatory acts alleged in the EEOC charge,

the Gupta exception is not triggered here, where the plaintiff simultaneously alleges discrimination *and* retaliation claims on the heels of a previously-exhausted discrimination claim. Because the plaintiff's second charge is not limited to advancing a retaliation claim arising from his first discrimination charge, it falls outside the scope of the Gupta exception.

The Gupta exception is limited; it allows a plaintiff to pursue an unexhausted retaliation claim if the acts underlying the retaliation claim came after and in response to a prior exhausted Title VII discrimination claim. See Gupta, 654 F.2d at 414; see also Scott v. Univ. of Miss., 148 F.3d 493, 514 (5th Cir. 1998)(Gupta "is limited to retaliation claims due to the special nature of such claims"), *abrogated on other grounds by* Kimel v. Fla. Bd. Of Regents, 528 U.S. 62 (2000); see also Sapp v. Potter, 413 Fed.Appx. 750, 752-53 (5th Cir. 2011)("Because the Gupta exception is premised upon avoiding procedural technicalities, it has only been applied to retaliation claims alone [and not] claims in which both retaliation and discrimination are alleged."); Simmons-Myers, 515 Fed.Appx. at 273-74 (noting that "this court

---

which were specified to be of an ongoing and continuing nature."). In an unpublished case, the Fifth Circuit expressly declined to answer whether Morgan abrogated Gupta. Simmons-Myers v. Caesars Entertainment Corp., 515 Fed.Appx. 269, 274 n.1 (5th Cir. 2013).

has not applied the Gupta exception to claims in which both retaliation and discrimination are alleged.").

Here, the plaintiff filed a second EEOC charge on June 17, 2015, after the issuance of the right to sue letter by the EEOC pertaining to his first Title VII discrimination charge filed on March 30, 2015.[8]  The plaintiff admits that he has not yet received a right to sue letter relative to his 6/17/15 charge.  He nevertheless argues that filing the second charge was not necessary because his retaliation claim grew out of his exhausted discrimination charge.[9]  Notably, however, in his second charge, Phipps claims sex discrimination and retaliation occurring after March 17, 2015 and culminating with his termination on May 21, 2015.[10]  Because the plaintiff's second charge is not limited to a retaliation claim arising out of his first discrimination charge, but instead additionally includes new charges of disparate treatment, Gupta does not save these claims from the exhaustion

---

[8] It is undisputed that the plaintiff exhausted a Title VII disparate treatment claim in his first EEOC charge, the March 30, 2015 charge, which pertained to the comments made by Captain Harris during the March 17, 2015 roll call, and for which he was issued a right to sue letter on May 14, 2015.
[9] The plaintiff fails to explain why in his opposition papers he ignores the discrimination aspect of his second charge.
[10] Phipps checked the boxes on the second charge sheet indicating "discrimination based on ... sex, other [sexual orientation], and retaliation," and he noted in the "particulars" section of the charge that the discrimination took place between March 17 and May 21, 2015; he also stated on the charge form that complaints were lodged against him at HANO based on both discriminatory and retaliatory animus.

requirement. Accordingly, the plaintiff's discrimination and retaliation claims arising from his second EEOC charge must be dismissed without prejudice as premature.

*B.*

HANO next seeks dismissal of the plaintiff's sex discrimination claim arising out of Captain Harris's March 17, 2015 comments during roll call.

According to the plaintiff's first EEOC charge, Captain Harris asked a subordinate officer whether homosexual people were "born gay, or is it a choice?" Captain Harris suggested that she hoped her son was not gay. A police officer named Marcus Dubuclet stated that he did not agree with homosexuality, believed it was a choice, and stated that he did not associate with homosexuals. Offended, the plaintiff filed a charge of discrimination and, once he received his right to sue letter, he sued HANO alleging discrimination based on sex.

Title VII of the Civil Rights Act makes it unlawful to discriminate against a person because of that person's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Phipps alleges that HANO discriminated against him based on his sex and sexual orientation. Because sexual orientation is not a

13

protected characteristic under Title VII,[11] the Court focuses its attention on whether Phipps has stated a claim for disparate treatment based on his gender. Examining the complaint, Phipps alleges the following relative to his sex-stereotyping or sex-based associational bias theories of discrimination:

> 12. As a bisexual male, Plaintiff's sexual orientation was not consistent with Defendant's perception of acceptable gender roles. In addition, Plaintiff's status as a bisexual male did not conform with Defendant's gender stereotypes associated with men.
>
> ...
>
> 20. [HANO] discriminated against Plaintiff because (i) his sexual orientation

---

[11] See, e.g., Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001)("Title VII does not prohibit discrimination based on sexual orientation" and noting that "Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation."); Spearman v. Ford Motor Co., 231 F.3d 1080, 1084-85 (7th Cir. 2000)("Congress intended the term 'sex' to mean 'biological male or biological female,' and not one's sexuality or sexual orientation. Therefore, harassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII."); Simonton v. Runyon, 232 F.3d 33, 36 (2d Cir. 2000)("Because the term 'sex' in Title VII refers only to membership in a class delineated by gender, and not to sexual affiliation, Title VII does not proscribe discrimination because of sexual orientation."); Williams v. Waffle House, No. 10-357, 2010 WL 4512819, at *3 (M.D. La. Nov. 2, 2010)(collecting cases and concluding that "actual or perceived sexual preference/ orientation . . . is not a cognizable claim under either Title VII or the LEDA"); Gaspard v. Our Lady of Lourdes Reg'l Med. Ctr., Inc., No. 08-622, 2009 WL 798818, at *5 (W.D. La. March 25, 2009)(dismissing claims of discrimination based on sexual orientation asserted under Title VII and Louisiana Employment Discrimination Law). In his sur-reply, the plaintiff challenges these holdings, calling them "flawed." But the text of Title VII is clear.

> was not consistent with Defendant's perception
> of acceptable gender roles; (ii) his status as
> a bisexual male did not conform with
> Defendant's gender stereotypes associated
> with men; and (iii) as a bisexual male, he
> associated with other males in his private
> life.

These allegations are nothing more than Phipps's theories of recovery stated in conclusory terms. What's missing is factual content supporting his theories of recovery. Nowhere in the amended complaint does the plaintiff present any factual allegations regarding HANO's perception of him, its perception of acceptable gender roles, or HANO's "gender stereotypes" or "associational bias" as to men; nowhere does plaintiff set forth factual allegations sufficient to support an inference that HANO discriminated against him because of his sex.

Phipps fails to allege facts, direct or circumstantial, that, if true, would suggest that HANO's actions (derogatory comments regarding homosexuals made during roll call) were based on Phipps's sex or its purported "sex stereotyping" or that HANO treated similarly situated employees who it did not subject to sex-based stereotyping more favorably. As for factual content, Phipps alleges that he is bisexual, that derogatory comments regarding homosexuals were made, that someone told him that Captain Harris had commented about Phipps and Martin "potentially having a sexual relationship." This fails to satisfy Rule 8's requirement that a plaintiff's statement show he is entitled to relief. Even

15

considering the plaintiff's sex stereotyping allegations, such allegations are nothing more than labels and conclusions. Mere labels and conclusions do not satisfy the plaintiff's obligation to provide the grounds of his entitlement to relief.

In Price Waterhouse v. Hopkins, 490 U.S. 228, 235-42 (1989), the Supreme Court recognized that a Title VII sex discrimination/harassment plaintiff may pursue a theory of sex stereotyping to support her claim. There, the plaintiff, a senior manager in an accounting firm, was passed over for partnership in part because she was too "macho" and "overcompensated for being a woman." Id. at 235. To improve her chances for partnership, she was told to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id. The Supreme Court held that when an employer makes employment decisions based on the degree to which an individual conforms to traditional notions of what is appropriate for one's gender, that is actionable discrimination under Title VII. Id. at 250. But, here, Phipps fails to allege any factual content that would align with this sex stereotyping theory. A plaintiff does not state a Title VII disparate treatment claim based on sex discrimination if he simply alleges in conclusory fashion that he is bisexual and his sexual practices did not conform to the gender stereotypes HANO associated with men. "[A] gender stereotyping claim should not be used to bootstrap protection for sexual

16

orientation into Title VII." See Vickers v. Fairfield Medical Center, 453 F.3d 757, 763-64 (6th Cir. 2006)(quoting Dawson v. Bumble & Bumble, 398 F.3d 211, 218 (2d Cir. 2005)).[12] Without alleging facts that would support a sex stereotyping theory,[13] this is precisely what the plaintiff is attempting to do. See id. at 763 (affirming dismissal for failure to state claim that plaintiff was discriminated against because of sex stereotyping). There are no factual allegations that, if true, plausibly suggest that HANO

---

[12] The Sixth Circuit's observations in Vickers are applicable here:

> Ultimately, recognition of Vickers' claim would have the effect of de facto amending Title VII to encompass sexual orientation as a prohibited basis for discrimination. In all likelihood, any discrimination based on sexual orientation would be actionable under a sex stereotyping theory if this claim is allowed to stand, as all homosexuals, by definition, fail to conform to tradition gender norms in their sexual practices. . . . the law simply does not embrace his claim. While the harassment alleged by Vickers reflects conduct that is socially unacceptable and repugnant to workplace standards of proper treatment and civility, Vickers claim does not fit within the prohibitions of the law.

Id. at 764-65.

[13] The Sixth Circuit in Vickers noted that the Supreme Court "focused principally on characteristics that were readily demonstrable in the workplace, such as the plaintiff's manner of walking and talking at work, as well as her work attire and her hairstyle," and observed that courts applying Price Waterhouse "have interpreted it as applying where gender non-conformance is demonstrable through the plaintiff's appearance or behavior." Id. at 763 (noting that the plaintiff "made no argument that his appearance or mannerisms on the job were perceived as gender non-conforming in some way and provided the basis for the harassment he experienced). Phipps's complaint is silent about his workplace appearance or behavior or perceived appearance or behavior.

17

discriminated against Phipps because he failed to conform to traditional gender roles, or that gender played a role in its employment decisions. Insofar as Phipps's allegations can be read to suggest that he was treated differently in the workplace, the factual content of his complaint does not point to animus based on gender, but, rather, at most based on his perceived homosexual relationship or bisexuality. As the text of Title VII as well as Price Waterhouse and its progeny make clear, this distinction is fatal to his Title VII claim.[14]

III.

Had the plaintiff sufficiently pled claims arising under Title VII, the Court would have the discretion to exercise supplemental jurisdiction over his remaining state law claims

---

[14] Phipps strongly disagrees. He contends in his sur-reply papers that "discrimination based on sexual orientation constitutes sex discrimination;" "an employer violates Title VII when it takes an adverse action against a lesbian, gay, or bisexual individual because of his or her personal association with persons of a certain gender;" and "sexual orientation discrimination is sex discrimination because it necessarily involves discrimination based on gender stereotypes." He principally invokes Price Waterhouse and EEOC v. Boh Bros. Constr. Co., L.L.C., 731 F.3d 444, 454 (5th Cir. 2013)(determining that a reasonable juror could find that plaintiff suffered discrimination "because of his sex" because he "fell outside of [the employer's] manly-man stereotypes."). But the plaintiff's arguments still miss the mark. Neither Price Waterhouse nor Boh Bros. hold that discrimination based on sexual orientation constitutes discrimination based on sex. Phipps continues to rely on theories of sex stereotyping without making any allegations of fact that might plausibly support that theory in his case.

pursuant to 28 U.S.C. § 1367(a). However, because the Court dismisses all claims over which it has original jurisdiction, the Court may, and does, decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. 28 U.S.C. § 1367(c). Phipps's state law claims are dismissed without prejudice.

Accordingly, for the foregoing reasons, the defendant's motion to dismiss is GRANTED. The plaintiff's Title VII claim based on the March 17, 2015 comments is hereby dismissed; the plaintiff's Title VII claims based on discrimination and retaliation arising from his June 17, 2015 charge of discrimination are hereby dismissed without prejudice as premature; and the plaintiff's state law claims are hereby dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

New Orleans, Louisiana, January 13, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE